Rosalie V. COUILLARD, individually and as personal representative of the Estate of Oliver G. Couillard, Plaintiff-Respondent,

v.

William A. VAN ESS, David F. Van Ess, and Milwaukee Mutual Insurance Company, a Wisconsin insurance corporation, Defendants-Appellants.

Court of Appeals

*No. 86–2103. Submitted on briefs June 8, 1987.—Decided September 15, 1987.*

(Also reported in 415 N.W.2d 554.)

For defendants-appellants, there was a brief by *Wayne R. Peterson, Wayne R. Peterson, S.C.,* Green Bay.

For plaintiffs-respondents, there was a brief by *Gary R. Weidner* and *Hanaway, Ross, Hanaway, Weidner, Garrity & Bachhuber, S.C.,* Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. William Van Ess, David Van Ess, factory owner-landlords, and their insurer appeal a judgment awarding damages to Rosalie Couillard and the estate of Oliver Couillard, her husband. Couillard was killed in an industrial accident while employed by Van Esses' corporate tenant. The Van Esses argue that, as owner-landlords, they had neither a common law duty nor a safe place statutory duty to provide for Couillard's safety. We reverse because there was insufficient evidence of control of the premises upon which to submit a statutory safe place instruction to the jury. We also conclude that the Van Esses are only entitled to a new trial on the issue of liability rather than dismissal because the common law duty of ordinary care that a landlord owes a tenant extends to commercial relationships.

The Van Esses initially operated a concrete block business as a partnership. In 1971, they incorporated the business and in 1973 leased the factory premises to the corporation.[1] The lease required the corporation, as tenant, to pay all taxes and insurance, to comply with all codes and regulations, and to make repairs and improvements. The Van Esses retained only the right of inspection and the right to enter and expel the corporation upon default in any lease provision.

For a number of years prior to incorporation, the Van Esses had used a large cement mixer located in an area on the second floor of the plant. The machine partially covered a seven-foot-square hole in the floor, and guardrails protected the opening on two sides. After incorporation, as part of a gradual process of renovation and expansion, the use of the mixer and related machinery was discontinued. The guardrails were later removed to provide access for employees engaged in the process of removing the machinery. The project left a hazardous exposure between the first and second floors. A plastic material was used to cover the exposed hole to prevent heat loss. Couillard, a long-time employee, while working in the area, walked onto the plastic covering and fell eleven feet to the first floor, suffering fatal injuries. Couillard's widow and her husband's estate commenced this action against the Van Esses as owners and landlord, alleging common law negligence as well as a violation of the Wisconsin safe place statute, sec. 101.11, Stats.

---

[1]The parties raise no issue concerning the power of the family corporation to create the relationship of landlord-tenant between itself and the Van Esses. *See Hensel v. Hensel Yellow Cab Co.*, 209 Wis. 489, 245 N.W. 159 (1932).

At the conclusion of the evidence, the jury was instructed that the Van Esses, as owners, had a duty of ordinary care toward Couillard and a further contingent safe place duty only if they had a right of control over the premises. The jury apportioned causal negligence, 20% to the Van Esses, 75% to their corporate tenant, and 5% to Couillard. Because of limited employer liability under the worker's compensation law, sec. 102.03(2), Stats., the effect of the jury's verdict exposes the Van Esses to responsibility for 95% of the damages. *See Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.,* 96 Wis. 2d 314, 326–30, 291 N.W.2d 825, 831–33 (1980).

The Van Esses first deny any duty of ordinary care to Couillard. *Pagelsdorf v. Safeco Ins. Co.,* 91 Wis. 2d 734, 284 N.W.2d 55 (1979), extended a landlord's duty to exercise ordinary care to maintain leased premises and abrogated any prior common law immunity. Historically, the landlord's immunity was based on the concept of transfer of possession and thus control to the tenant. *Id.* at 740, 284 N.W.2d at 58–59. Issues of the degree of a landlord's relinquishment of control and possession of the premises, the obviousness of the defect, and other factors are relevant only insofar as they bear on the ultimate question: whether the landlord exercised ordinary care in the maintenance of the premises under all of the circumstances. *Id.* at 745, 284 N.W.2d at 61.

The Van Esses would limit *Pagelsdorf*'s holding to residential premises. *Pagelsdorf*'s rationale does not justify such a narrow reading. *Pagelsdorf* viewed the abolition of landlord immunity as a natural and logical extension of *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975). *Antoniewicz* abolished

different levels of care due injured persons based upon antiquated distinctions between social guests and business invitees. Whether on residential premises or at a business place, the owner's duty is now the same. "There is no good reason why the business guest should be afforded greater protection than the social guest. Particularly in Wisconsin, where the economic-benefit theory has been discarded ... no logical basis for any dichotomy remains." *Id.* at 854, 236 N.W.2d at 10. *Antoniewicz* also cites *Smith v. Arbaugh's Restaurant, Inc.,* 469 F.2d 97 (D.C. Cir. 1972). *Arbaugh's* held the owner of a commercial enterprise to the same standard of ordinary care as any other landowner. *Id.* at 100. We similarly hold the commercial landlord to the same duty as a residential landlord in this case. The trial court therefore properly submitted the issue of the Van Esses' common law negligence to the jury.

The next issue is whether the Van Esses had a safe place duty under sec. 101.11. A safe place duty is imposed upon an owner only when there is retention of a right of control beyond mere legal ownership or right of inspection. *Potter v. City of Kenosha,* 268 Wis. 361, 68 N.W.2d 4 (1955); *see also Berger v. Metropolitan Sewerage Comm'n,* 56 Wis. 2d 741, 203 N.W.2d 87 (1973). If there is no evidence that the owner retained any control beyond inspection, the owner has no duty under the safe place statute. *Berger,* 56 Wis. 2d at 748, 203 N.W.2d at 91.[2] We conclude that they did not. The trial court has broad discretion concerning jury instructions. *McMahon v. Brown,* 125 Wis. 2d 351, 354,

[2]There appears to be an anomaly in the requirement of control as a condition precedent to a safe place duty when it is no longer critical to the duty of ordinary care. Since safe place law is a legislative creation, any change would have to be statutory.

371 N.W.2d 414, 416 (Ct. App. 1985). However, it is error for a court to give an instruction on an issue that finds no support in the evidence. *Lutz v. Shelby Mut. Ins. Co.,* 70 Wis. 2d 743, 750, 235 N.W.2d 426, 431 (1975). In determining whether an instruction should be given, the evidence must be viewed in the light most favorable to the party requesting it. *See id.* at 754, 235 N.W.2d at 433. Where the court has erroneously given an instruction, a new trial is not warranted unless the error is prejudicial. *Id.* at 750–51, 235 N.W.2d at 431. The test for prejudice is the probability, and not mere possibility, that the jury was misled. *Id.* at 751, 235 N.W.2d at 431. Stated another way, an error is prejudicial if it appears the result would be different had the error not occurred. *Id.*

Instructing the jury on an owner's safe place duty probably misled the jury. They were permitted to search for and find a duty arising from the evidence when, as a matter of law, none existed. The safe place duty imposes a higher standard of care than common law negligence. *Dykstra v. Arthur G. McKee & Co.,* 92 Wis. 2d 17, 26, 284 N.W.2d 692, 697 (Ct. App. 1979). Without the safe place instruction, the jury could easily have allocated a different percentage of negligence to the Van Esses.

Finally, while the trial court erred by admitting OSHA evidence of a prior guardrail violation unrelated to the accident, in view of our order for a new trial on liability we need not review that issue further.

*By the Court.*—Judgment reversed and cause remanded for a new trial on all liability issues.