Kyle Michael MUSKEVITSCH-OTTO, a minor, by his Guardian Ad Litem, Steven L. Toney, Plaintiff-Appellant,†

v.

Jessica A. OTTO, Affirmative Insurance Company, County of Winnebago and State Farm Mutual Automobile Insurance Company, Defendants,

ALLSTATE INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 00–3353. Submitted on briefs June 28, 2001.—Decided August 1, 2001.*

2001 WI App 242

(Also reported in 635 N.W.2d 611.)

† Petition to review denied 12-17-01.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Steven L. Toney* of *Toney & Wagner, S.C.*, New London.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael S. Murray* and *Matthew W. Moran* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. Kyle Michael Muskevitsch-Otto (Kyle) appeals a circuit court judgment upholding a jury verdict that he was not a resident of the home of Linda Tetting (his paternal grandmother) at the time he was injured in a one-car accident while a passenger in his mother's car. Because we agree with the circuit court that Kyle was not a resident of Tetting's home, we affirm.

¶ 2. This is an insurance coverage dispute. On October 16, 1995, Kyle was seriously injured in a one-car accident due to the negligence of his mother, Jessica A. Otto. At the time, Kyle was two years old and a front-seat passenger in the car. It is undisputed that Kyle always resided with Jessica. There was also testimony that Kyle spent a great deal of time with his grandmother, Linda. After Kyle settled with Jessica's insurer, he made a claim against Allstate Insurance Company (Allstate), Linda's insurer. Kyle based this claim on the fact that he had spent some time with Linda and that she was like a "second mother" to him. Allstate denied coverage and a jury determined that Kyle was not a resident of the Tetting household. Kyle appeals.

■

¶ 3. The issue in this case is the correctness of the Resident of Household instruction given to the jury. In Wisconsin, there is currently no standard instruction. Allstate proffered an instruction similar to one suggested in a recent Wisconsin Lawyer article, 73 Wis. Lawyer, Vol. 73, No. 4 (Apr. 2000). Kyle objected to this instruction and offered a different instruction. The trial court gave Allstate's suggested instruction.

¶ 4. Kyle complains that the instruction was an incorrect statement of the law because it placed improper emphasis on the intent of the plaintiff (a minor). The instruction given to the jury was as follows:

> Question one of the verdict asks if Kyle Michael Muskevitsch-Otto, was a resident of the household of Jeffrey and Linda Tetting at the time of the accident. In deciding whether a person is a resident of a particular household, the key element is the intent of that person

to be a resident of the household in question and to live under the same roof with a close, intimate, informal relationship.

To assist you in determining whether Kyle Michael Muskevitsch-Otto was a resident of Jeffrey and Linda Tetting's home, you are instructed that: at the time of the accident, Kyle Michael Muskevitsch-Otto was not living with Jeffrey and Linda Tetting. Kyle Michael Muskevitsch-Otto may be a resident of Jeffrey and Linda Tetting's home even though Kyle Michael Muskevitsch-Otto also lived elsewhere, and a person may be a resident of more than one household. If Kyle Michael Muskevitsch-Otto was not living with Jeffrey and Linda Tetting at the time of the accident, but intended to come back to live with Jeffrey and Linda Tetting, this indicates Kyle Michael Muskevitsch-Otto was a resident of that household. If, however, Kyle Michael Muskevitsch-Otto was physically absent from Jeffrey and Linda Tetting's home and had no intent to return and live with them, this indicates Kyle Michael Muskevitsch-Otto was not a resident of Jeffrey and Linda Tetting's household.

In deciding the intent of Kyle Michael Muskevitsch-Otto at the time of the accident, you are to consider that Kyle Michael Muskevitsch-Otto was two years old, and that he had established a separate residence with his mother, Jessica Otto. You may also consider the frequency and duration of stays at Jeffrey and Linda Tetting's home.

Finally, evidence such as personal possessions in the home, use of the home as a mailing address, or other use of Jeffrey and Linda Tetting's address may be considered but are not dispositive. A determination of residency in a household is based upon the facts of each individual case.

After review of all the facts and circumstances of this case and the application of these instructions, if you find that Kyle Michael Muskevitsch-Otto was a resident of Jeffrey and Linda Tetting's household at the time of the accident in question, then you should answer Question number one "yes." If not, you should answer Question number one "no."

The burden of proof with respect to the issue of whether Kyle Michael Muskevitsch-Otto was a resident of Jeffrey and Linda Tetting's household on the day of this accident is upon the plaintiff in this case.

¶ 5. The trial court has broad discretion when giving jury instructions so long as they fully and fairly inform the jury of the applicable law. *State v. Boshcka*, 178 Wis. 2d 628, 636–37, 496 N.W.2d 627 (Ct. App. 1992). When the trial court's instructions adequately cover the law, there is no error in its refusal to give a certain instruction even where the proposed instruction is not erroneous. *Northwestern Nat'l Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 263–64, 400 N.W.2d 33 (Ct. App. 1986).

¶ 6. We review an instruction in the context of the overall charge to the jury. *Buel v. LaCrosse Transit Co.*, 77 Wis. 2d 480, 493, 253 N.W.2d 232 (1977). Even if we find an instruction to be erroneous in part or in whole, a new trial is not warranted unless we also find that the error is prejudicial. *Couillard v. Van Ess*, 141 Wis. 2d 459, 464, 415 N.W.2d 554 (Ct. App. 1987). In short, an erroneous jury instruction is not fatal unless we are satisfied that it is *probable*—not merely possible—that the error affected the jury's determination. *Fleury v. Wentorf*, 82 Wis. 2d 105, 113, 262 N.W.2d 68 (1978).

■

¶ 7.   The trial court's jury instruction properly focused on intent. Kyle complains that this focus was erroneous. Kyle is wrong. Intent is a key factor in a residency determination even though there are other factors that also bear on the determination. *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis. 2d 27, 37, 197 N.W.2d 783 (1972); *see also Seichter v. McDonald*, 228 Wis. 2d 838, 846, 599 N.W.2d 71 (Ct. App. 1999) (where we recently re-examined and approved this statement of the law).

¶ 8.   The trial court not only correctly emphasized intent but correctly included other factors in its instruction. The other factors the trial court instructed the jury to consider were Kyle's frequency and duration of stays at the Tetting home, his personal possessions in the home, his use of the Tetting home as a mailing address, or his other use of the Tetting home as an address. In addition, the trial court instructed the jury to consider all of the facts and circumstances bearing on the question of residency. We are satisfied with the instruction in this regard.

■

¶ 9.   Kyle also argues that the instruction improperly required the jury to conclude that he, two years old on the date of the accident, could have formed intent. Kyle contends that a child of this age could not form intent and that the instruction instead should have focused on Jessica's and Linda's intent. Kyle ignores the fact that the instruction told the jury to factor in that Kyle was but two years old on the date of the accident. We conclude that the jury would inferentially understand that it had to look to the adult actors in this case who spoke for Kyle. We are satisfied with the instruction in this regard.

¶ 10. Finally, Kyle argues that the instruction was erroneous because in it the trial court made a factual finding that Kyle was not living with the Tettings on the date of the accident and conditioned a jury finding of residency at the time of the accident on an intent to return to live with the Tettings. We surmise that this part of the instruction was prompted by the fact that the trial court answered "yes" to the second question of the special verdict, which informed the jury of the undisputed fact that Kyle was living with Jessica at the time of the accident. Importantly, this part of the instruction was immediately followed by language that informed the jury that despite not living with the Tettings, "a person may be a resident of more than one household." We are satisfied with this clarification of the law.

¶ 11. Kyle also takes issue with the part of the instruction which told the jury that if he was not living with the Tettings at the time of the accident, but intended to come back to live with the Tettings, this would indicate that he was a resident of that household. Frankly, we are not sure why the trial court included this language. We believe it clouds the issue somewhat in that it possibly implies to the jury that Kyle had to live with the Tettings in order to be a resident. Nonetheless, because the evidence is so strong in support of the jury's finding of nonresidency, we believe that any error in the instruction did not affect the outcome and therefore does not warrant a reversal. *See Fleury*, 82 Wis. 2d at 113.

*By the Court.*—Judgment affirmed.